UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

SAMMY DIXISON,
        Petitioner,

v.                                                                Case No. 2:14-CV-189
                                                                HON. PAUL L. MALONEY

MITCH PERRY,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

        Petitioner filed this § 2254 petition for a writ of habeas corpus challenging the validity of his state court conviction for violations of his constitutional rights. On September 15, 2009, a jury convicted Petitioner of criminal sexual conduct in the first degree (MICH. COMP. LAWS § 750.520(b)), for which Petitioner was sentenced to 115 months to 30 years imprisonment. PageID.176-177; PageID.1264-1267.

        After his trial, Petitioner filed a direct appeal to the Michigan Court of Appeals. PageID.177. The Court of Appeals denied his application and affirmed his conviction on February 10, 2011. PageID.177. Petitioner then appealed to the Michigan Supreme Court, which denied his appeal on July 13, 2011. PageID.177-178.

        Petitioner then filed a motion for relief from judgment in the trial court, but the court denied his motion. PageID.178. Petitioner appealed this decision to the Michigan Court of Appeals, and the court denied his appeal on November 15, 2013. PageID.179. Petitioner appealed to the Michigan Supreme Court, but the court also denied his appeal on May 27, 2014. PageID.179.

        Petitioner filed a motion for reconsideration in the trial court on the basis of newly

discovered evidence and actual innocence, but the trial court denied the motion on June 21, 2013. PageID.179-180. Petitioner did not appeal this decision. Instead, he filed a habeas petition in this Court on September 9, 2014. ECF No. 1.

Petitioner maintains that his convictions were based on violations of his state and federal rights. Petitioner sets forth the following claims for relief:

> I. The prosecutor tells the jury that the CSC 1st took place in room 202 and no other place, withholding evidence from the jury to the contrary, not turning over to the defense police reports. This constitutes a violation of the Petitioner's constitutional rights.
>
> II. New[ly] discovered impeached [sic] evidence, and newly available evidence show without a doubt that the Defendant's claim of actual innocence is well supported with the exculpatory scientific evidence, and critical physical evidence.
>
> III. The Petitioner was denied a fair trial through the prosecution's withholding of evidence. This is a definite violation of the Petitioner's due process rights.
>
> IV. Petitioner was denied his constitutional rights under the VI Amendment to the U.S. Constitution which the right to effective assistance of counsel when the appellate counsel failed to raised [sic] meritorious claims on Petitioner's behalf.
>
> V. The Court of Appeals [sic] use of the stock phrases "failed to meet the burden of establishing entitlement to relief under MCR 5.608(D)" in [a] one sentence order did not indicate its decision was based on the merits.

PageID.4, 184-185. On November 5, 2014, I issued a report and recommendation indicating that the case should be dismissed as it is time barred by the statute of limitations. ECF No. 5. Petitioner filed an objection to the report and recommendation, claiming he is actually innocent and that a DNA lab report proves this. ECF No. 6. The district court judge issued an order for Respondent to file an answer, which also indicated that Petitioner may have overcome the

procedural bar of the statute of limitations under the miscarriage-of-justice exception by alleging actual innocence. ECF No. 14. Based on that order, Respondent filed an answer in opposition to Petitioner's habeas petition on July 1, 2016. PageID.18. Petitioner filed a reply to Respondent's answer on July 22, 2016. ECF No. 20. The matter is now ready for a decision.

Petitioner filed this petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. PUB. L. 104-132, 110 STAT. 1214 (AEDPA); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002) (noting that AEDPA prevents federal habeas "retrials" and ensures state convictions are made under state law). 28 U.S.C. § 2254(d) provides that any habeas application by a person in state custody shall not be granted in regards to any claim that has previously been adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This Court may only consider "clearly established holdings" of the Supreme Court, not lower federal courts, in analyzing a petitioner's claim under § 2254. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). A decision of the state court may only be overturned if: (1) it applies a rule contradicting Supreme Court governing law, (2) it contradicts a set of facts materially indistinguishable from a Supreme Court decision, (3) it unreasonably applies correct Supreme Court precedent to the facts of the case, (4) it unreasonably extends Supreme Court legal principles where it should not apply, or (5)

it unreasonably refuses to extend Supreme Court legal principle where it should apply. *Bailey*, 271 F.3d at 655; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" simply because that court decides, in its own judgment, that the relevant state decision applied federal law incorrectly. *Williams*, 529 U.S. at 410-11 (noting that it must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). This Court defers to state court decisions when the state court addressed the merits of petitioner's claim. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *see Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (allowing review of habeas application *de novo* when state court clearly did not reach the question). When applying AEDPA to state factual findings, factual issues by state courts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429.

I reiterate the position I took in my previous report and recommendation, indicating that Petitioner's habeas petition is time barred by the statute of limitations, and that his claim of actual innocence does not overcome that procedural bar. ECF No. 5. In *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013), the Supreme Court held that a habeas petitioner is not entitled to equitable tolling of the statute of limitations on the basis of a claim of actual innocence. *Id.* Instead, the Court ruled that a petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"

*McQuiggin*, 133 S. Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329) (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 1935-36.

In the instant case, although Petitioner baldly claims that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable jury would have convicted him.  *Schlup*, 513 U.S. at 329. While Petitioner claims that the DNA lab results are newly discovered evidence, it is clear that this evidence was admitted into evidence and thoroughly examined during the last day of his trial. PageID.1161-1169.  In fact, this DNA evidence was admitted by the defense's only witness. PageID.1166. Because Petitioner has wholly failed to provide evidence of his actual innocence, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His habeas petition therefore is time-barred.

Even if Petitioner's habeas petition was not time-barred, his habeas claims fail. For Petitioner's first claim, he asserts that the prosecutor engaged in misconduct in the following ways: (1) by improperly telling the jury that the rape took place in motel Room 202 during closing arguments, (2) by withholding Officer Ellis' police report (dated 9/9/09)  from the defense, and (3) by failing to disclose the DNA lab test results that were received on the last day of Petitioner's trial, which showed that Petitioner's DNA did not match the DNA samples taken from the victim's rape kit. PageID.25-28.

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). For habeas relief to be granted for such a claim, the prosecutorial misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The Court has emphasized a series of factors to be evaluated in determining whether prosecutorial misconduct so infected the trial as to amount to a violation of due process: (1) whether the comments were isolated or pervasive, (2) whether they were deliberately or accidentally placed before the jury, (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence, (5) the strength of the overall proof establishing guilt, (6) whether the remarks were objected to by counsel and (7) whether a curative instruction was given by the court. *See Darden*, 477 U.S. at 182-83; *United States v. Young*, 470 U.S. 1, 12-13 (1985); *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935). Notably, "[t]his court has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing arguments." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001).

With regard to Petitioner's assertion that the prosecutor acted improperly by telling the jury during closing arguments that the rape only occurred in Room 202, this claim lacks merit. Upon review of the prosecutor's closing arguments and rebuttal, it is clear that the prosecutor never told the jury that *no rape* occurred in Room 307; rather, he said that the other

potential assault that may have occurred in Room 307 is not important in this case:

> Did Jawan Bowden [another defendant] have sex with Takesia McCollough [victim] in Room 202 or Room 307? You're not here to decide that, ladies and gentlemen, that goes to a possible doubt. Don't worry about Jawan Bowden. That's for another jury, another time. What you're here to determine is a reasonable doubt. Did Sam Dixison the III have sexual intercourse with Takesia McCollough in Room 202 when she was incapacitated and he had reason to know or should have known, and she sustained an injury. Reasonable doubt, ladies and gentlemen, not possible doubt.
>
> . . . .
>
> The Defendant says the facts do not speak to the elements. Well no, they do. He brings up well there's a condom wrapper on the floor in Room 307 and because of that you cannot find him guilty of this offense. Well what does that speak to? It's a hotel. We don't know who used that condom. There's been no evidence to that. There's been no evidence to when that condom was even there, who put it there, what it goes to.
>
> Defense continues to argue that the rape occurred in Room 307 well after the Defendant was gone. Look at the facts. Okay, let's look at the facts. What evidence is there to suggest that happened? Zero. There is no evidence.
>
> . . . .
>
> The only facts, the only evidence that you heard that you can consider, Defendant was down in Room 202 with Takesia, Defendant had sexual intercourse with her, she was so drunk she could not consent, defense even conceded to that in his argument, Defendant knew or should have known that she was drunk and not able to consent, and that she sustained an injury. You've got evidence and the facts of injury. You've got evidence and facts, both from the Defendant's own five statements to five separate individuals that he had sex with her. You have evidence and facts that speak to her incapacitation. And the only evidence that you have that somebody else could have done this is the DNA test result. DNA test result, possible doubt as to who had sex with her. Not reasonable doubt.
>
> There is no evidence that anyone else caused the injury. There is no

> evidence that there was a sexual assault that took place in Room 307 after the Defendant left. There's no evidence that a sexual assault occurred in Room 202 after the Defendant left.

PageID.1210, 1213-1214.

Upon review of the evidence of record, it is clear that the prosecutor's theory of the case was that Petitioner assaulted the victim in Room 202, and that the jury did not need to worry about whether the victim was also assaulted in Room 307 because that was not relevant to this case. Based on this information, I conclude that the prosecutor's statements did not 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181.

Petitioner's next claim of prosecutorial misconduct (that the prosecutor improperly withheld Officer Ellis's police report from the defense) also lacks merit. The Michigan Court of Appeals considered this claim and denied it on Petitioner's motion for relief from judgment for the following reasons.

> Defendant finally argues that "police withheld a CSC reports [sic] and evidence of a crime at the Best Western Hotal [sic] in Room 307." The CSC police report that Defendant alleges that the prosecution withheld covered the time frame of 3:12 a.m. to 4:26 a.m.
>
> . . . .
>
> Detective Christina Ellis testified that her initial review of the footages were of both Room 202 and Room 307 that had a time frame of 2:52 a.m. to 3:09 a.m. (Trial Tr. vol. II, 543, Sept. 10, 2009.) However, she later created a supplemental police report covering Room 307 from 3:12 a.m. to 4:26 a.m. and provided that report to the prosecution. (Trial Tr. vol. II, 551, Sept. 10, 2009.) It was then revealed to the Court during a bench conference with the prosecution and defense counsel that the prosecution did not provide a copy of the supplemental report to defense counsel. (Trial Tr. vol. II, 551, Sept. 10, 2009.) Defense counsel then asked the Court for ten minutes to

> review the supplemental report, which was granted. (Trial Tr. vol. II, 551-552, Sept. 10, 2009.) After the conclusion of the ten minute break defense counsel assured the Court that he had time to review the supplemental report and he was ready to proceed. (Trial Tr. vol. II, 555, Sept. 10, 2009.) More specifically, the Court had the following exchange with defense counsel:
>
>> *The Court*: Thank you. And just so we're clear, Mr. Tagg, you have had the time to review those reports?
>> *Mr. Tagg*: Yes your Honor.
>> *The Court*: And are you ready to proceed?
>> *Mr. Tagg*: I am, your [H]onor.
>> *The Court*: Thank you.
>> *Mr. Tagg*: Thank you your [H]onor. [Trial Tr. vol. II, 555, Sept. 10, 2009.]
>
> Therefore, the Court finds that the information contained in the supplemental report was made available to the defense and thus there is no prosecutorial misconduct and/or "Kalamazoo Police sexual assault cover-up and scandal." It should also be noted that, defense counsel elicited testimony from Detective Christina Ellis based on the supplemental report after he had a chance to review them. (Trial Tr. vol. II, 555-560, Sept. 10, 2009.)

PageID.1563-1564 (emphasis in original). The trial court's decision is thorough and complete, and it does not inappropriately apply Supreme Court precedent to the facts of Petitioner's case. Upon review of the record, it is clear that the defense counsel was afforded sufficient time to review the new police report from Officer Ellis, and that he was able to question Officer Ellis about that report. Therefore, the alleged misconduct did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181. As a result, I recommend that this claim be denied.

With regard to Petitioner's final claim of prosecutorial misconduct (that the prosecutor withheld exculpatory DNA lab results from the defense), this claim will be discussed along with Petitioner's third claim for habeas relief (a *Brady* violation), as these two claims raise

the same issues.

Petitioner's second claim is that newly discovered scientific evidence demonstrates that he is actually innocent. PageID.5. The new evidence Petitioner refers to is the DNA lab test results. PageID.27. The DNA report indicated that Petitioner's DNA did not match any of the DNA samples taken from the victim's rape kit, but that the samples did match other people's DNA that were present at the hotel the night of the assault. PageID.27. Petitioner asserts that the prosecutor received this lab report on the last day of trial (September 15, 2009), but did not share it with defense counsel. PageID.27.

In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (noting actual innocence claims based on newly discovered evidence have "never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). The Sixth Circuit has ruled that a free-standing actual innocence claim based upon newly discovered evidence does not warrant federal habeas relief. *Wright v. Stegall*, 247 Fed. App'x 709, 711 (6th Cir. 2007) (citing *House v. Bell*, 547 U.S. 518 (2006) and *Herrera*, 506 U.S. 390) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (citing cases) (noting the Sixth Circuit has repeatedly held that free-standing actual innocence claims are not cognizable on habeas review). This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated.

*See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Even if it were a capital case, Petitioner's claim of actual innocence would fail since the DNA lab test results are not "new" evidence; rather, these test results were admitted into evidence through the defense's own expert witness on the last day of Petitioner's trial. PageID.1004-1005, 1161-1169; *see Schlup*, 513 U.S. at 324-25 (1995) ("To be [a] credible [claim of actual innocence in capital cases], such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Because the jury heard and considered the DNA test results that Petitioner alleges proves his innocence, he has not demonstrated that he has any "newly discovered evidence" that was not considered before his conviction. As a result, Petitioner's actual innocence claim lacks merit and should be denied.

Petitioner's third claim is that he was denied a fair trial based on the prosecution withholding exculpatory evidence from the defense. PageID.5. Specifically, Petitioner asserts that Officer Ellis's 9/9/09 police report and the DNA test results were not given to the defense, and that this evidence proves his innocence.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady*

violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Petitioner has failed to demonstrate that the prosecutor withheld either Officer Ellis's 9/9/09 police report or the DNA lab results from the defense. For example, the trial transcript shows that on September 10, 2009 (a day after the police report was written), the prosecutor provided Officer Ellis's 9/9/09 report to the defense. PageID.1035-1037. The judge admonished counsel on the record for not having given the report to defense counsel the night before when the prosecutor received the report (PageID.1038-1039); however, the court took a recess so that defense counsel had time to review the document. PageID.1035-1037. Defense counsel admitted that after having time to review the report, he was ready to proceed and was able to question the Officer about the report. PageID.1039. With regard to the DNA evidence, Petitioner has not shown that this was withheld from the defense either. In fact, Petitioner's own expert witness was the person that testified about the DNA lab test results. PageID.1004-1005, 1161-1169. Because Petitioner has not demonstrated that the prosecutor actually withheld any favorable evidence from the defense, he cannot demonstrate that he suffered any prejudice. As a result, I recommend that this claim be denied.

Petitioner's fourth claim is that he was denied his right to effective assistance of counsel when his appellate counsel failed to raise meritorious claims on appeal, thereby violating his Sixth Amendment right. PageID.5. Respondent contends that this claim is "considered exhausted but procedurally defaulted" since Petitioner did not raise this claim in the state courts and has no remedy to do so at this time. PageID.262. However, where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). Consequently, the undersigned reviews Petitioner's ineffective assistance of appellate counsel claim solely on the merits.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

"In the context of an ineffective-assistance-of-appellate-counsel claim, the *Strickland* analysis requires a petitioner to show that the omitted claims were 'clearly stronger than those presented' on direct appeal." *Kissner v. Palmer*, No. 16-1320, 2016 WL 3448153, at *3 (6th Cir. June 23, 2016) (citing *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Here, Petitioner asserts that his appellate counsel was ineffective by failing to raise a *Brady* violation claim and instead only raising claims arising from sentencing. PageID.40-41. However, upon review of Petitioner's claims on direct appeal to the Michigan Court of Appeals, it is clear that appellate counsel raised claims beyond those arising from Petitioner's

sentencing. For example, appellate counsel argued insufficiency of the evidence and two claims of an improper sentencing score. PageID.1315. Moreover, as for the *Brady* violation claim, it is clear based on the aforementioned analysis that this claim lacked merit—meaning appellate counsel was not ineffective by failing to raise it. Therefore, because Petitioner has failed to demonstrate that his appellate counsel performed deficiently, I recommend that this claim be denied.

Petitioner's final claim is that the Michigan Court of Appeals improperly used the "stock" phrase "failed to meet the burden of establishing entitlement to relief under MCR 5.608(D)," rather than deciding the case on the merits. This claim, however, raises an issue with regard to Michigan state law standards of review rather than constitutional violations. *See* 28 U.S.C. § 2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). In fact, the Sixth Circuit has declared that "[f]or excellent reasons, claims that a state erred in interpreting or applying its own criminal law or procedural rules are almost always rejected as grounds for granting the writ of habeas corpus." *Wilson*, 250 F.3d at 396 (citation omitted). Therefore, because Petitioner's final claim raises state law issues, I recommend that this claim be denied as it is not cognizable on federal habeas review.

Overall, I conclude that all of Petitioner's claims are without merit. Should Petitioner choose to appeal this action, the Court must determine whether a certificate of appealability may be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Each issue must be considered under the standards set forth in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. I examined each of Petitioner's claims under the *Slack* standard and conclude that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, this Court recommends that a **CERTIFICATE OF APPEALABILITY BE DENIED** as to each issue raised by Petitioner.

For the same reasons I recommend dismissal of this action, I certify that any appeal by Petitioner would be frivolous and not taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24. Therefore, it is recommended that any application by Petitioner for leave to proceed *in forma pauperis* on appeal be **DENIED**.

In summary, the undersigned recommends that Petitioner's habeas claims, filed pursuant to 28 U.S.C. § 2254, be **DISMISSED WITH PREJUDICE**.

**NOTICE TO PARTIES**: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); W.D.

MICH. LCIVR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   August 1, 2016                                        */s/ Timothy P. Greeley*
                                                                   TIMOTHY P. GREELEY
                                                                   UNITED STATES MAGISTRATE JUDGE